Good morning, Your Honor. Counsel, you may proceed. I'm Tanya Morrow from the District of Oregon Federal Defender's Office, and I'm representing Alonzie Clemmon in this case. And this case deals with an exhaustion issue with regard to a habeas corpus petition. Mr. Clemmon presented his claim to the Oregon courts according to the Oregon appellate rules. Those rules, as we've argued, only require that he ask the Supreme Court to review decisions of the Court of Appeals. He asked the Supreme Court to review the Court of Appeals' decision dismissing his appeal based on its finding that he procedurally defaulted because he left his halfway house without permission. The Court of Appeals did not consider the merits. Therefore, under the Oregon Supreme Court's rules for discretionary review, he was not required to ask the Supreme Court to review the merits. He was only required to ask the Supreme Court to review the decision of the Court of Appeals. Ms. Morrow, does the State of Oregon follow the practice that we follow in Washington, that when you seek a petition for discretionary review in the State Supreme Court, the Court of Appeals transmits the briefs and record that were filed in the Court of Appeals so that the Supreme Court can, if it chooses to do so, review those merits? Yes. But do you also rebrief the question that you want the Oregon Supreme Court to address in that instance? If, in fact, the merits, the Court of Appeals had answered the merits, the petition for review could rebrief those merits, but it also could just refer back to the Oregon appellate court briefs in order to raise the issue. The petition to the Oregon Supreme Court actually appended the arguments in the Court of Appeals? No. It went further than the rules required because, under the practice, the Supreme Court's not going to reach the merits. It's going to remand back to the Court of Appeals for the merits. But they went further than the rules required and actually indicated and summarized what the claims were, the ex post facto and due process claims, and then referenced the briefs below. And the Supreme Court in Farmer has clearly made it clear that those briefs are before it. If it's interested, it, you know, in considering further arguments made in the Court of Appeals, especially if the appellant asks or refers to it, those briefs are available for it to consider. If you're right that there was exhaustion because it was available to the Oregon Supreme Court, still isn't there the procedural bar because he was a fugitive? Well, the district court didn't resolve that issue. Instead of resolving that issue, in fact, the district court's initial cause in this case was for Mr. Clemen to demonstrate why he wasn't procedurally defaulted. Instead of resolving that issue, the district court found that he hadn't exhausted his claims because he failed to restate the merits of the claims in the petition for review, which he was not required to do. But that issue, the procedural bar is before us and it's been fully briefed. Well, I've alternatively asked the court to look at it. Whether or not there needs to be more factual development is a question that I think should be answered through remanding back to the district court. But the burden was on him, as I understand it, under Oregon law to show certain things in conformance with the rule of appellate procedure, and the district court noted that he had not done that. For example, he didn't show the Oregon Court of Appeals that he was back in custody and nor is there any showing that he surrendered as opposed to being re-arrested, which got him back into custody. Well, I respectfully disagree, Your Honor. Where in the record? District court did not rule at all. Where in the record does he show that? We submitted one piece of additional evidence with regard to the procedural default issue. We've also raised a cause and prejudice argument, which requires, I believe, more factual development. As to- On answering my question, counsel, where in the record can I find any showing as required under the Oregon rules of appellate procedure that your client voluntarily surrendered and, in fact, was back in custody in May at the time the Oregon Court of Appeals ruled? There was none in the Court of Appeals. So why then, in response to Judge Moskowitz's question, can't we rule that he is barred under the Fugitive Disentitlement Rule because he hasn't met his burden under the rule? Because at the time that he left the halfway house, the rule did not require him, did not give him the burden of proof. A fugitive is a continuing offense, so the fact that- Not under Oregon's rule. ... the rule got changed at the time in January, I don't think he can claim benefit on that, can he? Well, I think we've made a really good argument about how the Fugitive Disentitlement Rule, the inherent rule that the federal court is familiar with, is a separate rule in Oregon, and that's what this court addressed in Wood. It was the Oregon court's inherent rule. That rule has subsequently changed. They enacted a specific- You're not listening to my question. Being a fugitive is a continuing offense status from the day he departs the jurisdiction until there is a showing that he's now back in custody. So, as I understand the law, when there were changes in the Oregon court's rule in January and appellate decisions that came down, he's bound by all of those changes because they apply to him while he's in fugitive status. I disagree because I think Oregon defines when it may exercise that authority, and in this case, the rule was- Are we speaking about Rule 8- And it consistently applied to bar federal review. What is your best case to respond to my question about the fact that he's bound by not only the changes in the rule but the subsequent clarification decisions that came down while he was on the land? Because under our jurisprudence regarding an adequate state rule, we look at the time it was applied to him and whether he had notice of what the requirements were. What's your best case for that argument? He had no notice that he now had the burden of proof. I'm asking for a case, counsel, not a fact. Okay, I'm sorry. I'm sorry. Okay, you're not listening to my question. Because the rule as defined was defined in the rule adopted. What the rule says, counsel, I want a case. Give me a case citation that supports your position that he is not bound by the rule that went into effect in January and applied to him when the Oregon Court of Appeals ruled in May. I'm sorry, Your Honor. The rule itself says when it was effective, and it was effective after he left. And then the case the court in Fattel, the case of Fattel, was the first one to answer the question as to the burden of proof, and that was answered after he left. Why doesn't that apply to him? Because at the time that decision was rendered, he's still a fugitive. Okay. Maybe I should answer the question this way. It may apply to him, but it doesn't prevent the federal court from reviewing his habeas claims because the rule was too novel and too inconsistently applied to prevent federal review. If the rule applies to him, and if the fugitive disentitlement rule has been consistently followed in Oregon for 25 years, what more is required? Why was Judge Panner wrong when he found that this rule is consistently applied? Your Honor, I beg to differ. This is not the same rule that's been in effect for 25 years. It was enacted in 1989. Let me interrupt for just a second. Are we talking about Rule 8.05? 8.05.3. Sub 3, and we're talking about the sentence that was added in January 1, 2007? Is that? That's the change. That sentence says, If the court has not been advised otherwise, the court may assume that the appellant has not surrendered when the court considers and decides the motion. Well, now, your argument is that this does not apply to your client because what? He did not have the burden at the time that he left the halfway house. That burden was not shifted until after he left the halfway house, so he did not have the appropriate notice for an adequate state rule to apply. But the state case was still pending. The state case was still pending. So your argument is? We don't have a factual record as to how long he had left the jurisdiction of supervision, which is different from what the Oregon Supreme Court has said is important to the rule. What's important to the rule is that he left the jurisdiction of the court, not just supervision, and that's the basis for the inconsistency in the court of appeals decisions that I've briefed. We know when he left and we know when he was arrested. We do know that. That's all we know is that we don't know he was arrested. We just know he was in custody. I don't know if he had contact with his PO prior to being placed in custody. We don't know how he came about being placed in custody again, but we do know that he was in custody no later than February 15th. But there was an opportunity for his lawyer to put evidence in that he had surrendered. I don't necessarily disagree with that. He didn't necessarily have the burden, but secondarily, the defense attorney is not going to learn. The State is in the position, and this is the basis of our cause and prejudice argument, is the State is in the position to know when he's back in supervision, in custody, and had a duty to advise the appellate court based on the rule that applied to him at the time. Why isn't he subject to the same notice rules that all of us are when statutory or rule changes take effect, that he is, in essence, charged as a matter of law with notice of the law that applies to him while he is continuing in fugitive status? I don't want to argue with you about that. Well, we're not arguing. I'm still waiting for an answer to the question. I guess the answer is this, is because we are looking at the situation in the context of an adequate State rule to bar Federal habeas review, and in order for it to be adequate, it has to be consistently and principally applied. In this case, we have demonstrated that the Oregon Court of Appeals had inconsistently applied the obscound provision of the new written rule in 1990, I believe it was promulgated in 1993, and because the rule changes, he did not have adequate notice, which is a requirement for the Federal court to be barred from reviewing it based on an adequate State rule. Thank you, Counsel. You have consumed all your time. Oh, sorry, Judge, you may have. He was taken into custody, and then he was resentenced on the violation, correct? We don't have a record as to exactly what happened. All we know is he left the halfway house, and then by no later than 47 days he was released. 47 days later, he's back in custody, and then I did get his custody. He was in and out of custody for the next couple months. But wasn't he released again? He was released again. Was he sentenced on the violation? We don't have any records of that, Your Honor, and it wasn't presented. Isn't that something? Well, in Oregon, you don't have to know. The probation officers have authority to sanction you, so I believe that's probably what happened. Thank you. All right. Thank you, Counsel. We will hear now from the State. Ms. Lageson. May it please the Court, Aaron Lageson on behalf of the Oregon Board of Parole and Post-Prison Supervision. If we thought that the district court was in error on the exhaustion issue, should we decide on the procedural bar, or should we send it back for the district court to develop the record more fully on that? You should decide it on the procedural bar. The parties briefed it fully, and I believe that was actually the party's primary pitch before the district court. What about her argument that factually he didn't have an opportunity to develop the record in the district court? Again, I think if you look at the briefing in the district court, we were fighting about the adequacy of the procedural bar, so there certainly was an opportunity to develop the record on whether the rule is an adequate procedural bar. And with respect to that, I'll focus my time on Oregon's Fugitive Dismissal Doctrine, although I'm happy to answer any questions that the Court has. I'd be particularly interested in your response to Counsel's point that 8053 does not apply in this case because of the sequencing, or at least the date of his leaving the halfway house. Well, 8053 was in effect at the time he left the halfway house, and our position is that sentence that was added effective January 1st, 2007, doesn't change anything before January 1st. When you say 805 was in effect, you mean the prior version. In other words, the version I read was adopted on January, or effective January 1, 2007. Mm-hmm. Okay. There's been three iterations of this rule. The very first rule was adopted January 1st, 1994, and that rule said that if somebody escapes or absconds from supervision, then dismissal of an appeal was mandatory. So if there was a period of time for about 10 years where dismissal was mandatory. In 2005, the rule was amended to make dismissal discretionary. Actually, it always said if somebody had absconded and not surrendered, first dismissal is mandatory, then it became discretionary. And then in January 2007, what I believe is a clarifying sentence was added to the end of the rule, saying that the court may assume that the person has not surrendered if not informed otherwise. But which was the version that was in effect that's relevant to this particular case, the 05 version? I believe the 05, Oregon courts, the court didn't say. Didn't have that last sentence. Correct. When he absconded, he would have had noticed that that's the direction it was going, but the Oregon courts typically apply the ORAPs that were in effect at the time the notice of appeal or petition for review was filed, which would suggest based on their practice that they probably looked at the 2005 rule. That said, as the court's decision in State v. Federal made clear under that rule, the petitioner had the burden of proving surrender. And even before these rules were in place, I think just a review of the case law under Oregon's Fugitive Disentitlement Doctrine shows that typically when evidence is presented to an appellate court showing that an appellant has absconded or escaped and either the defendant's lawyer doesn't contest that evidence or put on any other evidence, when there's no other evidence, the court dismisses the case. And so I think that appellants in Oregon have been on notice for a very long time that once they escape or abscond from supervision and they have an appeal pending, if they don't do something, go to court or have their lawyer go to court and show that they voluntarily surrendered and resubmitted to the jurisdiction of the state, then they're at risk of having their appeal dismissed. The court may dismiss the appeal. Yes. And I think in terms of what the Supreme Court has said in looking at the adequacy of a state procedure rule and what this court said in Wood v. Hall is the main concerns are whether the petitioner or defendant would have had adequate notice of the rule, which I think the years of cases in Oregon and then the refinements of the rule of civil procedure have put people in Oregon on notice of the possibility that if you abscond, then your case might be dismissed. And then the other issue is whether the state is sort of arbitrarily applying the rule. And I think the cases show that the Oregon courts consistently apply the rule in the same way. They look closely at the evidence of abscond in front of the court, and if the evidence is sufficient to allow an inference that the person is intending to evade supervision, then they often dismiss the appeals. And if the evidence doesn't show that, such as if the evidence shows that they, you know, violated a non-reporting requirement like failure to pay a fine, then the courts say that doesn't show that you have intended to evade supervision,  Can you address the first point with regard to the issue surrounding the argument that was presented or not presented to the Oregon Supreme Court on... Oh, the fair presentation? Yeah. Yes, I can. I think that in looking at whether somebody has... a petitioner has to fairly present it to the state court. And in O'Sullivan, what the court said is the real issue is whether review would be available, not whether review would be likely, but whether review would be available on the merits issues. Reading the Oregon rules, there's absolutely nothing that would preclude a petitioner from raising the issues in the merits issues in a petition for review from the state court. Although review is of the decision, the rules governing what the contents of the petitions may contain, which is Chapter 9 of the ORATS, doesn't in any way suggest that a petitioner could not also raise the merits issues in front of the court. And in fact, particularly in a case like this one, which is review on an administrative record, the Supreme Court would be in as good a position as the intermediate appellate court to review the merits issues. And so since under the rules Oregon has not precluded or prohibited raising these issues, I think under O'Sullivan the petitioner was required to raise them to the state's highest court. If the application of these sexual offenders provisions is really ex post facto, is he left without a remedy at this point because he took off from the halfway house? I'm not sure about that. Typically they have to. He probably doesn't have a state court remedy, although in some cases if somebody's, you know, violated a condition associated with a sex offender designation, I know that some circuit courts, this isn't the record of course, but I know that some circuit courts in Oregon have entertained challenges to sex offender designations in the context of enforcement actions. But it's sort of a... If he were resentenced and he got the same sexual offender provisions, he could challenge them at that point, perhaps. Right. And these designations didn't come, they're connected obviously with the offense of conviction, but these were decided by the Board of Parole and Post-Prison Supervision at the time he was released. The sexually violent, dangerous offender designation is something that subjects him to intensive supervision, and the predatory sex offender designation puts him on a registry. Well, do you know whether he was resentenced when he was released, after he was arrested and then brought back into custody? I don't know. Unless there's anything further. Nothing for me. Thank you. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Moskowitz, O'scannlain, Tallman